ALAN C. CHEN, (SBN 224420)
    acchen@zuberlaw.com
HEMING XU (SBN 302461)
    hxu@zuberlaw.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone:   (213) 596-5620
Facsimile:    (213) 596-5621

Attorneys for Defendants
Pin Shine Industrial Co., Ltd.,
Suzhou Pinshine Technology Co., Ltd., and
Suzhou Sunshine Technology Co., Ltd.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOURTE INTERNATIONAL LIMITED BVI, a British Virgin Islands company; FOURTE INTERNATIONAL SDN.BHD., a Malaysia company,<br><br>            Plaintiffs,<br><br>      v.<br><br>PIN SHINE INDUSTRIAL CO., LTD., a Taiwan business company; SUZHOU PINSHINE TECHNOLOGY CO., LTD., a Peoples Republic of China company; SUZHOU SUNSHINE TECHNOLOGY CO., LTD., a Peoples Republic of China company; BOBBIN & TOOLING ELECTRONICS INTERNATIONAL COMPANY OF BVI, a British Virgin Islands company,<br><br>            Defendants. | Case No. 3:18-cv-00297-BAS-BGS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR COURT ORDER AUTHORIZING ALTERNATIVE METHODS OF SERVICE ON DEFENDANTS SUZHOU PINSHINE TECHNOLOGY CO., LTD.; SUZHOU SUNSHINE TECHNOLOGY CO., LTD.; AND PIN SHINE INDUSTRIAL CO., LTD.**<br><br>[Filed Concurrently with Declarations and Request for Judicial Notice In Support Thereof]<br><br>Judge:   Hon. Cynthia Bashant<br>Date:     December 3, 2018<br><br>Complaint Filed: February 7, 2018 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 2

    A.   Plaintiffs have never attempted service through available methods, and instead, filed a series of substantively and procedurally deficient *ex parte* motions for alternative service. ............ 2

    B.   Per the Court, Plaintiffs' *ex parte* motions lack substantive merit because Plaintiffs did not avail themselves of service methods that were available without judicial intervention ................................... 4

III.  LEGAL STANDARD .............................................................................. 4

    A.   Rule 4(f) provides various methods of service. ...................................... 4

    B.   Movants must demonstrate that judicial intervention is *necessary* the avail themselves of Rule 4(f)(3) .......................................................... 5

IV.  LEGAL ARGUMENT ............................................................................. 6

    A.   Plaintiffs fail to demonstrate that judicial intervention is necessary because they have not even attempted service via available methods ................................................................................ 6

        1.   *Even though the Plaintiffs' own exhibit explains how to serve Chinese defendants, Plaintiffs inexcusably do not even attempt service of the Suzhou Defendants via the Hague Convention.* ................................................................. 6

        2.   *Plaintiffs inexcusably fail to serve Pin Shine Taiwan under available methods.* .............................................................. 9

            (a)  Taiwanese law expressly prohibits service under Rule 4(f)(2)(C)(ii) ......................................................... 10

            (b)  Despite retaining a service company, Plaintiffs failed to properly serve Pin Shine Taiwan through available means. ................................................... 11

            (c)  Even if service via Rule 4(f)(2)(C)(ii) was proper, Plaintiffs' sole attempt is insufficient. .......................... 12

    B.   Relief under Rule 4(f)(3) is not justified because Defendants have not been evasive. ...................................................................... 12

    C.   That service by email or personal delivery is the quickest method of service is insufficient to necessitate the Court's intervention. ......... 14

    D.   Service by email is prohibited by the Hague Convention as Between the United States and China; moreover, Taiwanese law prohibits service by email. ................................................................ 16

1

V.     CONCLUSION ................................................................................................ 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2147-1003 / 1364501.3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE METHODS OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agha v. Jacobs*
       Case No. C 07-1800 RS, 2008 WL 2051061 (N.D. Cal. May 13, 2008) ....... 16

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*
       227 F.3d 1104 (9th Cir. 2000) ........................................................................ 1

*Arista Records LLC v. Media Servs. LLC*
       Case No. 06 CIV. 15319NRB, 2008 WL 563470 (S.D.N.Y. Feb. 25,
       2008) .............................................................................................................. 8

*Blue Underground Inc v. Caputo*
       Case No. CV 14-1343-GW(PJWX), 2014 WL 12573679 (C.D. Cal.
       Sept. 8, 2014) ......................................................................................... 8, 12, 15

*California Bd. Sports, Inc. v. G.H. Dijkmans Beheer B.V.*
       Case No. CIV.09CV1855LRBB, 2009 WL 3448456 (S.D. Cal. Oct. 21,
       2009) .......................................................................................................... 5, 16

*CYBERsitter, LLC v. People's Republic of China*
       Case No. CV 10-38-JST (SHX), 2010 WL 11549350 (C.D. Cal. Sept.
       13, 2010) ........................................................................................................ 7

*Eclipse Grp. LLP v. Fortune Mfg. Co.*
       Case No. 14CV0441-GPC-WVG, 2014 WL 6907897 (S.D. Cal. Dec. 8,
       2014) ............................................................................................................ 12

*Emine Tech. Co. v. Aten Int'l Co.*
       Case No. C 08-3122 PJH, 2008 WL 5000526(N.D. Cal. Nov. 21, 2008) ...... 11

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*
       Case No. 05 CV 4260 (GBD), 2006 WL 2015188 (S.D.N.Y. July 13,
       2006) .......................................................................................................... 7, 8

*Rio Props., Inc. v. Rio Intern. Interlink*
       284 F.3d 1007 (9th Cir. 2002) ................................................................. 5, 14

*Sheskey v. Madison Metro. Sch. Dist.*
       Case No. 12-CV-488-WMC, 2013 WL 6628990 (W.D. Wis. Dec. 17,
       2013) ............................................................................................................ 13

*Sompo Japan Ins. Co. of Am., Inc. v. I-Sheng Elec. Wire & Cable, Co.*
       Case No. CV075984JFWPJWX, 2008 WL 11342687 (C.D. Cal. Feb. 7,
       2008) ...................................................................................................... 10, 11

*Tart Optical Enterprises, LLC v. Light Co.*
       Case No. LACV1608061JAKMRWX, 2017 WL 5957728 (C.D. Cal.
       Sept. 27, 2017) .................................................................................... 5, 7, 15

*Telebrands Corp. v. GMC Ware, Inc.*
    Case No. CV1503121SJOJCX, 2016 WL 6237914 (C.D. Cal. Apr. 5, 2016) .................................................................................................. 12

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*
    Case No. CV1604502BROMRWX, 2016 WL 7479373 (C.D. Cal. Sept. 8, 2016) .................................................................................................. 1

*Utterkar v. Ebix, Inc.*
    Case No. 14-CV-02250-LHK, 2015 WL 1254768 (N.D. Cal. Mar. 18, 2015) .................................................................................................. 7

## **RULES**

Article 123 of the Taiwan Code of Civil Procedure .................................... 10

Fed. R. Civ. P. 4(f)(1) ........................................................................... 4, 6

Fed. R. Civ. P. 4(f)(2) ........................................................................ 5, 9, 11

Fed. R. Civ. P. 4(f)(2)(C)(ii) .......................................................... 3, 9, 10, 12

Fed. R. Civ. P. 55(c) ................................................................................ 3

Hague Convention, Art.10(a) .................................................................. 16

Rule 4 1993 Advisory Committee Notes ...................................................... 8

U.S. District Court, Southern District of California, Local Rules 83.3(g) .............. 2, 3

2147-1003 / 1364501.3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE METHODS OF SERVICE

## I.   __INTRODUCTION__

Specially appearing[1] Defendants Suzhou Pinshine Technology Co., Ltd. and Suzhou Sunshine Technology Co., Ltd. (collectively, "Suzhou Defendants") and Pin Shine Industrial Co., Ltd. ("Pin Shine Taiwan") (collectively with Suzhou Defendants, "Defendants") oppose Plaintiffs' Fourte International Limited BVI and Fourte International SDN.BHD's (collectively, "Plaintiffs") Motion for Order Authorizing Alternative Methods of Service (the "Motion").

Plaintiffs' Motion is without merit and contravenes the Court's previous order by unnecessarily seeking authorization for alternative service when Plaintiffs have not even attempted service via methods that are available without Court order. [*See* Dkt. 13 at 4:20-25.] Instead, as revealed through their own words, Plaintiffs have declined to apply their own understanding of best practice regarding service so as to manufacture alleged service difficulties to support the instant Motion.

Alternative service is authorized when Plaintiffs *__need__* to serve evasive defendants, not merely when it would be more convenient for Plaintiffs. Here, Defendants have not been evasive. To the contrary, Defendants have been actively arbitrating with Plaintiffs, and Pin Shine Taiwan intends to bring a motion to compel arbitration as to the above-captioned dispute. In sum, Plaintiffs' Motion wastefully prioritizes the Plaintiffs' resources over the Court's and seeks relief to rescue them from their own unjustified refusal to serve in good faith via available methods.

---

[1] Defendants' special appearance in this action is intended to challenge Plaintiffs' requested manner of service of process, and should not be construed as accomplishing service or submitting to the Court's jurisdiction. If and once Plaintiffs effectuate service, Defendants intend to assert, and do not waive, applicable service of process and jurisdictional defenses. [*See* Dkt. 13 (Order Denying *Ex Parte* Motions for Order Authorizing Alternative Means of Service of Summons and Complaint) at 3:23 – 4:11]. *See also Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000) (defendant preserved right to bring a Rule 12(b)(5) motion when he raised an insufficient service of process defense in his previous motion); *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. CV1604502BROMRWX, 2016 WL 7479373, at *5 (C.D. Cal. Sept. 8, 2016) (where, in its "first appearance in th[e] action," defendant "explicitly stated that it intended to assert the defense of insufficient service of process . . . it did not waive its right to challenge Plaintiff's method of service").

## II.   **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

### A.   **Plaintiffs have never attempted service through available methods, and instead, filed a series of substantively and procedurally deficient *ex parte* motions for alternative service.**

Plaintiffs initiated suit on February 7, 2018.  [Dkt. 1.]  ***Over nine months later***, ***Plaintiffs have still not even attempted*** to properly serve Defendants via methods that do not require judicial intervention.  § IV.A., *infra*.  Instead, despite the diversity of options available to effectuate service without Court order, Plaintiffs have relentlessly, and without justification, sough judicial intervention via a series of *ex parte* motions (collectively, "*Ex Parte* Motions"), none of which comply with the notice requirements of L.R. 83.3(g)[2] and this Court's Standing Order ¶ 6.[3]

On March 13, 2018, Plaintiffs moved *ex parte* for Court authorization to serve

---

[2] L.R. 83.3(g) (emphasis added) provides:

> A motion for an order ***must not be made ex parte unless it appears by affidavit or declaration*** (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney.

[3] This Court's Standing Order ¶ 6 (emphases added) provides:

> Before filing any *ex parte* application, ***counsel must contact the opposing party to meet and confer*** regarding the subject of the *ex parte* application. All *ex parte* applications ***must comply with Civil Local Rule 83.3(h)***. The ***declaration*** required by Civil Local Rule 83.3(h) must document the following: (1) efforts to contact opposing counsel, (2) counsel's good faith, in person or by telephone meet-and confer efforts to resolve differences with opposing counsel, and (3) opposing counsel's general position regarding the ex parte application. ***Any ex parte application filed with the Court must be served on opposing counsel via facsimile, electronic mail with return receipt requested, or overnight mail***.

1    Pin Shine Taiwan and Bobbin & Tooling Electronics International Company

2    ("Bobbin") via mail.  [Dkt. 3 at 2:1-7.]  *Contra* L.R. 83.3(g) and Standing Order ¶ 6,

3    Plaintiffs failed to: (1) timely provide this first *ex parte* motion to either Pin Shine

4    Taiwan or Bobbin; and (2) attach a declaration regarding any good faith efforts to

5    notify and confer with nonmoving defendants.  Declaration of Alan Chen ("A. Chen

6    Decl.") ¶ 2.  [*See generally* Dkt. 3 (no declaration).]  The Court granted this *ex parte*

7    motion [Dkt. 4] because it was "unopposed."[4]  [Dkt. 13 at 2:3-8.]  Ultimately, an

8    unopposed entry of default was entered against Bobbin,[5] and Pin Shine Taiwan

9    remains unserved.[6]  [Dkt. 13 at 2:3-8; Dkt. 16 (entry of default).]

10           Then, on March 22, 2018 and March 30, 2018, Plaintiffs moved *ex parte* for

11   authorization to serve the Suzhou Defendants via mail and personal delivery to

12   counsel, respectively.  [Dkt. 5 at 2:1-9 (mail); Dkt. 9 at 2:1-9 (personal delivery).]

13   Despite Plaintiffs' disingenuous and obfuscating attempts to suggest otherwise,

14   Plaintiffs seemed to have deliberately failed to comply with the procedural notice

15   and meet and confer requirements of the Local Rules and this Court's Standing

16   _____

17   [4] As explained in Section IV.A.2.a., *infra*, Defendants respectfully submit that

18   service of Pin Shine Taiwan via Rule 4(f)(2)(C)(ii), which the Court authorized,

19   [Dkt. 4] is improper because Taiwanese law prohibits service under Rule
     4(f)(2)(C)(ii).

20   [5] Despite Plaintiffs' egregious and consistent failures to comply with procedural

21   rules, Plaintiffs have refused to set aside the entry of default against Bobbin, and
     Bobbin accordingly intends to move to set aside the entry of default against it for

22   good cause. A. Chen. Decl. ¶ 6  Fed. R. Civ. P. ("Rule") 55(c) ("The court may set
     aside an entry of default for good cause.").

23

24   [6] Although the Court states that Pin Shine Taiwan was not served because it refused
     service, [Dkt. 13 at 2:3-8] Pin Shine Taiwan respectfully notes that it is currently

25   unaware of any internal records reflecting this service attempt.  A. Chen Decl. ¶ 5.
     Importantly, the Court's records indicate that mail service was not effected to

26   anyone in particular at Pin Shine Taiwan.  [Dkt. 11 at 1.]  This is particularly
     problematic because Fourte should have known to whom the package should have

27   been specifically addressed to, such that Fourte's service efforts were not reasonably

28   calculated to effectuate notice and service.  A. Chen Decl. ¶ 5.

1  Order to deprive Defendants' of any meaningful opportunity to respond.  [Dkt. 6 at

2  3:1-22.; Dkt. 10 at 4:24 – 6:16.]  Indeed, Plaintiffs were indisputably aware by

3  March 28, 2018 of Defendants' special appearance through counsel in the above-

4  captioned dispute [Dkt. 6] and still inexplicably failed to warn Defendants' of their

5  March 30, 2018 *ex parte* motion.  [D.E. 10-1 ¶¶ 2-9.]

6        **B.**    **Per the Court, Plaintiffs' *ex parte* motions lack substantive merit**

7                **because Plaintiffs did not avail themselves of service methods that**

8                **were available without judicial intervention.**

9        On April 11, 2018, this Court denied Plaintiffs' second and third *ex parte*

10  motions.  [Dkt. 4 at 4:26-27.]  After preliminarily noting that Plaintiffs raised a

11  procedurally impermissible argument, [*id.* at 3:20-23] the Court concluded that

12  Plaintiffs' *ex parte* motions lacked substantive merit because Plaintiffs failed to

13  show "that the circumstances of this action *necessitate the Court's intervention*."

14  [*Id.* at 4:12-15 (emphasis added).]  In particular, Plaintiffs failed to "allege[] any

15  facts" showing "that *the available methods of service* have *failed to affect* [*sic*]

16  *service*, that this case is of particular urgency requiring alternative service methods,

17  or any other facts to support their requests."  [*Id.* at 4:20-23 (emphases added).]

18  "Instead, *Plaintiffs only state that they attempted to serve a 'waiver of service of*

19  *summons packet' on Pinshine by Federal Express*, which Pinshine refused."  [*Id.* at

20  4:23-25 (emphasis added).]  This instant Motion followed, which again prioritizes

21  the Plaintiffs' convenience over the Court's.

22  **III.**   **LEGAL STANDARD**

23        **A.**    **Rule 4(f) provides various methods of service.**

24        Foreign defendants may be served through "any internationally agreed means

25  of service that is reasonably calculated to give notice, such as those authorized by

26  the Hague Convention on the Service Abroad of Judicial and Extrajudicial

27  Documents."  Rule 4(f)(1).

28        "[I]f there is no internationally agreed means, or if an international agreement

**4**

allows but does not specify other means" service may be effected

    [B]y a method that is reasonably calculated to give notice:

        (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

        (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

        (C) unless prohibited by the foreign country's law, by:

        (i) delivering a copy of the summons and of the complaint to the individual personally; or

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt[.]

Rule 4(f)(2).

Last, Rule 4(f)(3) (emphasis added) allows service of foreign defendants "by other means not prohibited by international agreement, *as the court orders*."

**B.**    **Movants must demonstrate that judicial intervention is *necessary the avail themselves of Rule 4(f)(3).***

"A plaintiff must seek and obtain prior court approval for a requested alternative method of serving process under [Rule 4(f)(3).]" *Tart Optical Enterprises, LLC v. Light Co.*, No. LACV1608061JAKMRWX, 2017 WL 5957728, at *6 (C.D. Cal. Sept. 27, 2017). "Although a plaintiff 'need not have attempted every permissible means of service of process before petitioning the court …' a plaintiff must show that 'facts and circumstances of the present case *necessitate*[ ] the *court's intervention*.' " *Id.* (emphases added) (quoting *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)); *California Bd. Sports, Inc. v. G.H. Dijkmans Beheer B.V.*, No. CIV.09CV1855LRBB, 2009 WL 3448456, at *1 (S.D. Cal. Oct. 21, 2009) (same). [*Accord* Dkt. 13 at 4:13-15 ("The Court finds that Plaintiffs have not shown that the circumstances of this action *necessitate* the Court's intervention.") (emphasis added).]

## IV.   <u>LEGAL ARGUMENT</u>

### A.   <u>Plaintiffs fail to demonstrate that judicial intervention is necessary because they have not even attempted service via available methods.</u>

Plaintiffs have not attempted in good faith to serve any Defendant through methods that are available without judicial intervention, such that Plaintiffs can neither legally nor logically assert "any facts" showing "that the *available methods of service failed* to affect [*sic*] service." [Dkt. 13 at 4:20-25 (emphasis added).] Instead, Plaintiffs seem to have deliberately failed to comply with the letter and spirit of available service methods, so as to manufacture service of process difficulties that the Plaintiffs frivolously assert excuse them from their obligation not to needlessly trouble the Court for unjustified intervention.  ***Put differently, Plaintiffs' instant Motion seeks relief based on Plaintiffs' own wrongdoing***.

> #### 1.   *Even though the Plaintiffs' own exhibit explains how to serve Chinese defendants, Plaintiffs inexcusably do not even attempt service of the Suzhou Defendants via the Hague Convention.*

Rule 4(f)(1) expressly contemplates service of Chinese defendants via the Hague Convention and Plaintiffs expressly acknowledge that China is a signatory of the Hague Convention.  [Dkt. 21-1 at 4:14-15.]  Because the Suzhou Defendants are indisputably Chinese, [*id.* at 3:4-7] and because Plaintiffs neither attempted to utilize the Hague Convention to service the Suzhou Defendants nor adequately explain their failure to do so, Plaintiffs fail to demonstrate that relief under Rule 4(f)(3) is necessary as to the Suzhou Defendants.  Moreover, Plaintiffs' rationale for Rule 4(f)(3) relief—that China's Ministry of Justice will not serve papers containing references to Taiwan—is contradicted by their own papers, untested, and conclusory, so as to be insufficient as a matter of law for judicial intervention.

Although Plaintiffs vaguely assert they have "undertaken efforts to effect service on" the Suzhou Defendants, it appears Plaintiffs ***have not attempted service***

6

Case No. 3:18-cv-00297-BAS-BGS
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE METHODS OF SERVICE
2147-1003 / 1364501.3

*via the Hague Convention*.  [Dkt. 21-3 ¶ 5.]  Instead, Plaintiffs' so-called "efforts" seem not to have gone beyond (1) "retain[ing]" a "process service company" and (2) "consult[ing]" various sources for service advice.  [*Id.*]  Plaintiff's excuse for not going further seems to be that the "Chinese Ministry of Justice will refuse to process or approve service of any legal documents that reference Taiwan … because China does not recognize Taiwan."  [*Id.*]  The frivolousness of this excuse is demonstrated by Plaintiffs' own filing, which explains that service may be effected if Plaintiffs simply refer to "Taiwanese defendants" as "foreign corporations."  [*Id.* ¶ 6, Exhibit A, at 4.]  Plaintiffs conveniently omit this work-around in their memorandum.  [*See generally* Dkt. 21-1.]  In sum, Plaintiffs' contention that they have "no option but to seek the Court's intervention" is patently false.  [Dkt. 21-1 at 8:12-13.]  *See also, e.g.*, *CYBERsitter, LLC v. People's Republic of China*, No. CV 10-38-JST (SHX), 2010 WL 11549350, at *4 (C.D. Cal. Sept. 13, 2010) (explicitly recognizing how plaintiffs may serve via the Hague Convention in China even if the documents referenced Taiwan)

Plaintiffs' Motion as to the Suzhou Defendants can be denied solely on the ground that Plaintiffs failed to actually attempt service of the aforesaid parties via the Hague Convention and inexplicably failed to heed the advice of their own exhibit.  [Dkt. 21-3 ¶ 6, Exhibit A, at 4 (explaining how to serve).]  Numerous decisions nationwide deny Rule 4(f)(3) relief when Plaintiffs do not attempt service through available methods, such as under the Hague Convention.[7]  Indeed, courts

---

[7] *See, e.g.*, *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 WL 1254768, at *7 (N.D. Cal. Mar. 18, 2015) (dismissing defendant because plaintiff "did not comply with either the Hague Convention or Indian law in attempting to serve"); *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260 (GBD), 2006 WL 2015188, at *4 (S.D.N.Y. July 13, 2006) ("Despite the Court's guidance … ***plaintiff made no attempt to serve defendant Nishat through means comporting with the Hague Convention***.") (emphasis added); *see also Tart*, 2017 WL 5957728, at *6 ("Plaintiff shall forthwith commence the process … pursuant to the Hague

have held that the Rule 4(f)(3) movants should make multiple service attempts, even though such attempts may increase time and costs, because the Hague Convention exists for a reason and should not be so easily skirted.[8]  *See, e.g.*, *Blue Underground Inc v. Caputo*, No. CV 14-1343-GW(PJWX), 2014 WL 12573679, at *4 (C.D. Cal. Sept. 8, 2014) ("[A]llowing First Line to simply serve Surf by way of Federal Express because it has already done so once would *permit a plaintiff to skirt the requirements of the Hague Convention rather easily* in many cases. A rejection of First Line's request *may lead to added expense and some measure of delay* in litigating the Counterclaim in this case (and forestall First Line's efforts to proceed by way of preliminary relief), *but the Hague Convention exists for a reason*." (emphases added)).

Moreover, given that Plaintiffs' assertion of Hague Convention service futility is ***untested and self-contradicted*** by their own filings, [Dkt. 21-3 ¶ 6, Exhibit A, at 4] Plaintiffs' ***wholly conclusory*** (and incorrect) assertion of the futility of service is insufficient as a matter of law for relief under Rule 4(f)(3).  *Cf. Arista Records LLC v. Media Servs. LLC*, No. 06 CIV. 15319NRB, 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) ("[A] plaintiff seeking relief under Rule 4(f)(3) must adequately support the request with affirmative evidence of the lack of judicial assistance by the host nation-***conclusory assertions of the futility of Hague service are unavailing***.") (emphasis added);[9] *see Gateway*, 2006 WL 2015188, at *4 ("In

_____

Convention … A failure to comply … will result in the dismissal.").

[8] *Accord* Rule 4 1993 Advisory Committee Notes ("The Hague Convention ***furnishes safeguards against the abridgment of rights of parties*** through inadequate notice … [T]here have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, ***resort*** may be had to the provision set forth in subdivision (f)(3)." (emphases added)).

[9] In *Arista*, 2008 WL 563470 the "record [wa]s plain" that Russia and the United States "suspended" "judicial cooperation" under the Hague Convention such that relief under Rule 4(f)(3) is justified.  Here, Plaintiffs' own exhibit demonstrates that

the September conference, ***plaintiff represented to the Court that it was informed that an attempt to serve through Pakistan's central authority, pursuant to the Hague Convention, would be futile***. Plaintiff's ***mere assertion*** that attempting to serve defendant Nishat through the Hague Convention would be futile is an insufficient defense to defendant's 12(b)(5) motion.") (emphasis added).

2.   *Plaintiffs inexcusably fail to serve Pin Shine Taiwan under available methods.*

Plaintiffs assert that relief under Rule 4(f)(3) is proper as to Pin Shine Taiwan because they attempted service once under Rule 4(f)(2)(C)(ii).  [*See* Dkt. 3 at 2:1-13 (moving for service via Rule 4(f)(2)(C)(ii)); Dkt. 21-1 at 3:8-11 (referencing service attempt via "Court Clerk's service package").]  This argument is without merit.

First, because (1) Plaintiff's prior service attempt under Rule 4(f)(2)(C)(ii) is expressly prohibited by Taiwanese law and (2) Plaintiff never attempted to serve Pin Shine Taiwan through other available means, such as means prescribed by Taiwanese law,[10] Plaintiffs wholly failed to properly serve Pin Shine Taiwan.  This precludes Rule 4(f)(3) relief.  *See* note 7, *supra* (plaintiffs must attempt service through other means, including means prescribed by foreign law, before being able to demonstrate that Rule 4(f)(3) judicial intervention is necessary).

Second, even if Rule 4(f)(2)(C)(ii) service is proper (which it is not), Plaintiffs fail to establish that they are entitled to relief under Rule 4(f)(3) because Pin Shine Taiwan is currently unaware of any internal records indicating an attempt to serve it via mail.  Note 6, *supra*.  Also, even if Pin Shine Taiwan did receive the Court Clerk's service package, a single service attempt is insufficient to show that judicial intervention is necessary.

_____

Plaintiffs have options available for working around the alleged issue of Plaintiffs' pleading papers containing references to Taiwan.  [Dkt. 21-3 ¶ 6, Exhibit A, at 4.]

[10] *See, e.g.*, Rule 4(f)(2) (providing *inter alia* that Taiwanese defendants may be served via methods "prescribed by" Taiwanese law).

In any event, a decision regarding Rule 4(f)(3) relief may be unnecessary. Plaintiff Fourte International Ltd. ("Fourte") and Pin Shine Taiwan have executed an agreement to arbitrate.  A. Chen Decl. ¶ 3, Exhibit 1 at 26-27.  Pin Shine Taiwan intends to enforce this agreement and move to compel arbitration as to the above-captioned dispute.   *See, e.g.*, *Sompo Japan Ins. Co. of Am., Inc. v. I-Sheng Elec. Wire & Cable, Co.*, No. CV075984JFWPJWX, 2008 WL 11342687, at *3 (C.D. Cal. Feb. 7, 2008) (reluctantly granting plaintiff a "further opportunity to serve Defendant" but noting that because plaintiff "has formally initiated arbitration in Hong Kong" and represented to the court "its intention to seek a stay of this action," plaintiff must, per court order "file a Motion to Stay this Action Pending Arbitration")

           (a)     Taiwanese law expressly prohibits service under Rule 4(f)(2)(C)(ii).

Under Rule 4(f)(2)(C)(ii), service may be effected "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt" "*unless prohibited by the foreign country's law*." (Emphasis added.) Taiwanese law expressly prohibits service via Rule 4(f)(2)(C)(ii) because the Taiwan Code of Civil Procedure ("Taiwan CCP") expressly prohibits service by mail that excludes the involvement of Taiwanese courts. Request for Judicial Notice ¶ 1, Exhibit 1; Declaration of Wendy Hsieh ("W. Hsieh Decl.") ¶ 2; *see also Sompo Japan Ins. Co. of Am., Inc. v. I-Sheng Elec. Wire & Cable, Co.*, No. CV075984JFWPJWX, 2008 WL 11343361, at *2 (C.D. Cal. Jan. 3, 2008), *order amended on reconsideration on other grounds*, No. CV075984JFWPJWX, 2008 WL 11342687 (C.D. Cal. Feb. 7, 2008) ("The mandatory language employed in the relevant Taiwanese statutes impliedly, if not expressly, prohibits service [under Rule 4(f)(2)(C)(ii)]. In the absence of any authority to the contrary, the Court finds that Plaintiff has failed to meet its burden of demonstrating that service was proper.")

1                   (b)      Despite retaining a service company, Plaintiffs failed to

2                          properly serve Pin Shine Taiwan through available means.

3       Plaintiffs failed to properly serve Pin Shine Taiwan through available means

4 that do not necessitate judicial intervention.  Accordingly, Rule 4(f)(3) relief is

5 improper; it is not the Court's job to perform the legal spade work necessary to

6 enable the Plaintiffs to figure out how they may effect service.  Note 7, *supra*; *see*

7 *also Emine*, 2008 WL 5000526, at *5 ("Lastly, the court declines Emine's request

8 that it direct service by other means not prohibited by international agreement as

9 permitted by Rule 4(f)(3). It is not the court's role to figure out what other means of

10 service are available or whether those means are or are not prohibited by any

11 international agreement.").

12       First, because Plaintiffs do not allege that they attempted mail service on Pin

13 Shine Taiwan with the assistance of Taiwanese courts, Plaintiffs have not properly

14 served Pin Shine Taiwan via mail. *See generally* Dkt. 21-1; *cf. Emine Tech. Co. v.*

15 *Aten Int'l Co.*, No. C 08-3122 PJH, 2008 WL 5000526, at *3 (N.D. Cal. Nov. 21,

16 2008)  ("Emine has not shown that the clerk delegated any execution officer or post

17 office for the purpose of mailing service to Aten. Thus, Emine's attempted service

18 through either international or Taiwanese mail did not comport with the

19 requirements of Rule 4(f)(2)(A).").

20       Second, Plaintiffs failed to properly serve Pin Shine Taiwan because they

21 failed to avail themselves of other available means of service, such as the letters

22 rogatory process provided under Taiwanese law and Rule 4(f)(2).  *Sompo*, 2008 WL

23 11343361, at *2 ("[U]nder Rule 4(f)(2), the proper method to effectuate service in

24 Taiwan is through the letter rogatory procedure.").

25       Defendants further note that Plaintiffs' failures to properly serve Pin Shine

26 Taiwan are particularly egregious in light of their representation that they can and

27 have retained a company that specializes in international service of process.  [Dkt.

28 21-3 ¶ 5.]  In light of the supposed expertise they have at their fingertips, Plaintiffs

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE METHODS OF SERVICE

1   mysteriously fail to explain why they did not even attempt to serve Pin Shine

2   Taiwan via methods expressly provided by Taiwanese and United States law that do

3   not require judicial intervention.

4            (c)    Even if service via Rule 4(f)(2)(C)(ii) was proper,

5                   Plaintiffs' sole attempt is insufficient.

6         Even assuming arguendo that Rule 4(f)(2)(C)(ii) service on Pin Shine Taiwan

7   is proper (which it is not), Plaintiffs still fail to demonstrate that relief under Rule

8   4(f)(3) is necessary and proper.  First, Pin Shine Taiwan is currently unaware of any

9   internal records indicating that there was an attempt to serve it via mail; moreover,

10  the service attempt was not addressed to any particular Pin Shine Taiwan agent,

11  even though Fourte knew to whom they should have addressed the matter to.  Note

12  6, *supra*.  Thus, Plaintiffs' attempt does not justify Rule 4(f)(3) relief. *Cf. Eclipse*

13  *Grp. LLP v. Fortune Mfg. Co.*, No. 14CV0441-GPC-WVG, 2014 WL 6907897, at

14  *3 (S.D. Cal. Dec. 8, 2014) (granting motion to set aside default judgment where

15  "the return receipt [wa]s not signed by Defendant" and "there [wa]s not other

16  satisfactory evidence that the summons and complaint were delivered").

17        Second, even if the Plaintiffs truly attempted service, one alleged attempt is

18  insufficient to show that judicial intervention is necessary.  *See, e.g.*, *Blue*, 2014 WL

19  12573679, at *4 (one attempt insufficient to grant relief under Rule 4(f)(3)); *cf.*

20  *Telebrands Corp. v. GMC Ware, Inc.*, No. CV1503121SJOJCX, 2016 WL 6237914,

21  at *5 (C.D. Cal. Apr. 5, 2016) ("Ordinarily ... two or three attempts ... should fully

22  satisfy the requirement of reasonable diligence and allow substituted service to be

23  made [in lieu of personal service]") (internal quotation marks and citation omitted).

24     **B.**    <u>**Relief under Rule 4(f)(3) is not justified because Defendants have**</u>

25          <u>**not been evasive.**</u>

26        Plaintiffs seem to further argue, rather perfunctorily, that Rule 4(f)(3) relief is

27  justified because Defendants have been "elusive" because (1) Defendants refused to

28  execute waivers of service of process; and (2) Pin Shine Taiwan "refused delivery of

1   the Court Clerk's service package." [Dkt. 21-1 at 7:24-28.] This contention is

2   without legal and factual merit.

3   First, for reasons explained in Section IV.A., *supra*, Plaintiffs' failure to

4   attempt to serve Defendants properly via means available without judicial

5   intervention means that Plaintiffs should be denied Rule 4(f)(3) relief as a matter of

6   law. *See also* note 7, *supra* (citing authorities nation-wide).

7   Second, Defendants have been far from evasive and in fact, are all actively

8   arbitrating with Plaintiffs. In fact, Pin Shine Taiwan has sought to enforce the sued-

9   upon agreement by filing for arbitration with JAMS (the "Arbitral Proceeding"). A.

10   Chen Decl. ¶ 3, Exhibit 1 (JAMS Demand for Arbitration, which contains *inter alia*

11   the "Reciprocal Independent Sales Representative Agreement" referenced in

12   Plaintiffs' Complaint). [*See* Dkt. 1 ¶ 15.] Indeed, Plaintiffs' attempt to subject Pin

13   Shine Taiwan to this Court's jurisdiction is a blatant violation of Fourte's agreement

14   to arbitrate such that Pin Shine Taiwan intends to move to compel arbitration. *See*

15   A. Chen Decl. ¶ 3, Exhibit 1 at 26-27 (arbitration clause). Moreover, Plaintiffs have

16   brought counterclaims in the Arbitral Proceeding against all Defendants, including

17   the Suzhou Defendants. *Id.* ¶ 4, Exhibit 2 at 4-5.

18   Third, refusing to sign waivers regarding service of process does not

19   constitute evasion. Defendants' refusal to execute waivers are entirely consistent

20   with their exercise of their lawful prerogatives. *See, e.g*, Sheskey v. Madison Metro.

21   Sch. Dist., No. 12-CV-488-WMC, 2013 WL 6628990, at *3 (W.D. Wis. Dec. 17,

22   2013) ("While the School District still refuses to waive service of process—which is

23   its prerogative—there is no indication that defendant has attempted to evade

24   service."). Indeed, the Court had previously expressly ruled that service of a

25   "waiver of service of summons packet" is insufficient for establishing the need for

26   judicial intervention. [Dkt. 13 at 4:23-25 (internal quotation marks omitted).]

27   Plaintiffs do not explain why such waivers, while not justifying relief back then,

28   somehow justify relief now.

Fourth, Pin Shine Taiwan did not "refuse[]" to accept "delivery" of any parcel from the Court's Clerk.  *See* note 6, *supra*.  Pin Shine Taiwan is unaware of any internal records regarding this alleged service attempt and in any event, the service attempt was not addressed to any particular Pin Shine Taiwan agent, even though Fourte knew to whom they should have addressed the matter to.  A. Chen Decl. ¶ 5.

Fifth, even if Plaintiffs' allegations regarding Defendants' alleged elusiveness had factual and legal merit, such allegations do not rise to the level of evasiveness requiring judicial intervention.  Illustratively, in *Rio Properties*, 284 F.3d at 1013, 1016, on which Plaintiffs rely, the court found that an alternative means of service was proper where, *inter alia*, (1) the foreign "elusive" defendant "str[ove] to evade service of process" by listing a false U.S. address that was not authorized to accept service on its behalf; (2) the plaintiffs were unable to discover the defendant's address in Costa Rica despite searching international directory databases and retaining a private investigator; and (3) the defendant then failed to respond to the plaintiffs' emergency motion for alternative service of process.  In contrast, in light of the aforesaid Arbitral Proceeding, Plaintiffs here neither contend nor can contend that Defendants' physical addresses are unknown or that Defendants have been somehow "elusive" as contemplated by the *Rio* court.

### C.    That service by email or personal delivery is the quickest method of service is insufficient to necessitate the Court's intervention.

Plaintiffs also seem to argue that the Court should grant its Motion because service under Rule 4(f)(3) will be much faster in moving the case forward.  [*See, e.g.*, Dkt. 21-2 at ¶ 7; Dkt. 21-3 at ¶ 5].  This argument is again without legal and factual merit.

First, for reasons explained in Section IV.A., *supra*, Plaintiffs' failure to attempt to serve Defendants properly via means available without judicial intervention means that Plaintiffs should be denied Rule 4(f)(3) relief as a matter of law.  *See also* note 7, *supra* (citing authorities nation-wide).

Second, "the mere fact that service of process abroad is expensive and time consuming is generally not sufficient to demonstrate that the facts and circumstances necessitate the district court's intervention." *Tart Optical*, 2017 WL 5957728 at *6 (citation omitted).  [*Accord* Dkt. 13 at 4:15-17 ("Plaintiffs only argue that the requested alternative methods of service are the most efficient and effective methods of service, but this argument does not meet the requisite standard for obtaining a court order.") (citations omitted).]  Otherwise, methods that are available without judicial intervention can be skirted far too easily, *contra* international agreement and comity concerns.  *Blue*, 2014 WL 12573679, at *4; *see also* note 8, *supra*.  Moreover, while granting Rule 4(f)(3) motions under a lax standard would make things more convenient for plaintiffs, encouraging such motion practice to further the plaintiffs' convenience would mean a profusion of Rule 4(f)(3) motions that are filed without any demonstrated need, thus unnecessarily bloating the courts' workload.

Third, Plaintiffs fail to adduce any facts that overcome the aforesaid precedent, which establishes that mere convenience is insufficient for Rule 4(f)(3) relief.  In particular, Plaintiffs still have not "alleged any facts that show that the available methods of service have failed to affect service, that this case is of particular urgency requiring alternative service methods, or any other facts to support their requests."  [Dkt. 13 at 4:20-23].  Thus, there is no justification to allow an alternative service method and the Court should find insufficient cause to authorize service by alternative means.  *See Tart Optical*, 2017 WL 5957728 at *6 (denying plaintiff's motion to authorize service by email and through defendant's Facebook account).

Fourth, as explained above, Plaintiffs' alleged difficulties regarding service are a product of their own actions (and inactions).  *See* § IV.A., *supra* (explaining how *inter alia* Plaintiffs' plain refusal to follow their own exhibit's advice seems to be part of a deliberate effort to manufacture service difficulties to justify the instant

1   Motion). Plaintiffs should not be rescued from a problem of their own making. *See,*

2   *e.g.*, *California Bd.*, 2009 WL 3448456, at *2 ("In this case, Plaintiff argues that the

3   court's intervention … is necessary because Plaintiff's October 6, 2009 service by

4   mail1 may be too slow to defeat Defendant's efforts to litigate this dispute in

5   Missouri. This was in large part caused by Plaintiff's decision to delay the start of its

6   efforts to serve from August 26, 2009 until October 6, 2009.");

7         **D.**    **Service by email is prohibited by the Hague Convention as Between**

8                **the United States and China; moreover, Taiwanese law prohibits**

9                **service by email.**

10       Plaintiffs contend that service on the Suzhou Defendants by email is proper

11   because the Hague Convention, to which China is a signatory, does not prohibit

12   email service. [Dkt. 21-1 at 4-5]. This is untrue. The Hague Convention *prohibits*

13   effectuating service by "*postal channels*, directly to persons abroad" *where the*

14   *destination country has objected to such means of service*. Hague Convention,

15   Art.10(a). Plaintiffs concede that China has indeed objected to Article 10 of the

16   Hague Convention regarding service by "postal channels." [*See* Dkt. 21-1 at 5:1-2.]

17   Moreover, email is a "postal channel," or tantamount to the same. *See Agha v.*

18   *Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008)

19   (finding "no policy or other basis" for drawing a distinction between email and

20   "postal channels"). Thus, per Article 10(a) of the Hague Convention and China' s

21   objection to service via postal channels, email service of the Suzhou Defendant sis

22   improper as a matter of law. *See id.* at *1-*2 (denying motion to serve summons

23   and complaint by email and holding that plaintiff seeking alternative service by

24   email on defendants under Rule 4(f)(3) had failed to show that such means were

25   permissible under the applicable international agreement, as Germany was a

26   member of the Hague Convention and had filed its objection under Article 10 to

27   service through postal channels, and email could not be distinguished from "postal

28   channels"). Similarly, Taiwanese law prohibits service by email for purposes of

2147-1003 / 1364501.3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE METHODS OF SERVICE

1   foreign litigation, W. Hsieh Decl. ¶ 3, such that the Court should deny Rule 4(f)(3)

2   relief as to Pin Shine Taiwan.

3   **V.**   **CONCLUSION**

4       Defendants respectfully request that this Court issue an Order denying

5   Plaintiffs' Motion for an Order Authorizing Alternative Methods of Service by

6   email to Defendants' alleged principal and/or by email and personal delivery to

7   Defendants' alleged California counsel.  Plaintiffs have never sought in good faith

8   to serve Defendants via available methods, and instead, have sought to manufacture

9   alleged service difficulties to justify judicial intervention.  Plaintiff's Motion is

10  therefore without merit and improperly prioritizes Plaintiffs' own convenience over

11  the Court's.  Moreover, as explained *supra*, Plaintiffs' lawsuit before this Court is a

12  blatant breach of Fourte's obligation to arbitrate, and Pin Shine Taiwan intends to

13  move to compel arbitration as to the above-captioned matter.  Thus, if the Court

14  relaxes the standard for Rule 4(f)(3) relief and grants the Plaintiffs' Motion, the

15  Court risks undermining the parties' arbitration agreement and unnecessarily

16  complicating the instant proceedings while inviting additional frivolous motions for

17  alternative service.

18                                          Respectfully submitted,

19  Dated: November 19, 2018        ZUBER LAWLER & DEL DUCA LLP

20

21                 By:   /s/ *Alan C. Chen*

22                      Alan C. Chen

23                      Heming Xu

                    Attorney for Defendants

24                      Pin Shine Industrial Co., Ltd.,

                    Suzhou Pinshine Technology Co., Ltd.

25                      Suzhou Sunshine Technology Co., Ltd.

                    acchen@zuberlaw.com

26                      hxu@zuberlaw.com

27

28